UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| CANDIDA VILLAGOMEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>LINCOLN LIFE ASSURANCE COMPANY OF BOSTON,<br><br>    Defendant. | Case No. 22-cv-00292-LB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 26 |

## INTRODUCTION

The plaintiff's former employer, Document Technologies, allegedly fired her (after sixteen years of employment) when she injured her hip, had surgery, and became temporarily disabled. She alleged that the termination was wrongful because Document Technologies did not accommodate her disability or engage in the interactive process. As her employment contract required, she is arbitrating her claims against Document Technologies. In this lawsuit, she sued Lincoln Life, a company that contracted with Document Technologies to handle employee leave and placed the plaintiff on long-term disability for two years when in fact, she allegedly needed only several months to recover. This, she alleges, resulted in Document Technologies' terminating her.[1]

---

[1] First Am. Compl. (FAC) – ECF No. 23; Astanehe Decl. in Supp. of Mot. to Remand – ECF No. 9-2 at 2 (¶ 2). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 22-cv-00292-LB

In the operative first amended complaint (FAC), the plaintiff asserts three claims: professional negligence and intentional and negligent infliction of emotional distress.[2] Lincoln moved to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) on the grounds that they are preempted by the Employee Retirement Income Security Act (ERISA) and are not plausibly pleaded.[3] The court grants the motion because the claims are preempted. The dismissal is without prejudice.

## STATEMENT

### 1. The Events Leading to the Plaintiff's Termination

The plaintiff worked as a service specialist in Document Technologies' San Francisco office, making copies, handling print jobs, and delivering items to clients, among other tasks.[4] On April 8, 2020, Document Technologies furloughed the plaintiff due to the COVID-19 pandemic and California's statewide stay-at-home order.[5] On May 9, 2020, while on furlough, the plaintiff injured her hip and back when she was hit by a dozen shopping carts at Costco.[6] In July 2020, she had hip surgery to address her injuries, which left her temporarily disabled because she experienced "considerable pain" with activities such as walking and sitting.[7] Her recovery plan was twelve weeks, but in September 2020, it "was extended" an additional twelve weeks.[8]

On August 1, 2020, Document Technologies tried to "force" the plaintiff back to the office at the end of its COVID-19 furlough, but the plaintiff explained to her manager that she could not return yet due to her temporary disability. "Except for a single conversation that contemplated a return to work on crutches while working closely with an assistant amid the COVID-19 pandemic, [Document Technologies] never discussed accommodating [the plaintiff's] disability."[9] Instead, it

---

[2] FAC – ECF No. 23 at 9–16 (¶¶ 43–78).

[3] Mot. – ECF No. 26.

[4] FAC – ECF No. 23 at 1 (¶ 1), 3 (¶¶ 12–14).

[5] *Id.* at 4 (¶ 15).

[6] *Id.* (¶ 16).

[7] *Id.* (¶ 17).

[8] *Id.* (¶ 19).

[9] *Id.* at 4–5 (¶ 20).

placed the plaintiff on leave under the Family and Medical Leave Act (FMLA), which it calculated incorrectly to end on September 28, 2020.[10]

During her FMLA leave, Document Technologies "connected" the plaintiff to Lincoln to discuss her protected leave and disability. As part of that process, Document Technologies told the plaintiff that she "could go on long-term leave for up to four months without repercussion."[11] Lincoln interviewed the plaintiff about her disability, reviewed her medical records (which showed her disability and expected full recovery in about twelve weeks), and contacted her doctor to discuss her disability and recovery horizon.[12] After communicating with Document Technologies "[t]hroughout 2020," Lincoln placed the plaintiff on long-term disability for two years (until October 2022), even though her medical records showed her ability to return to work in January 2021.[13] Lincoln also "never discussed accommodating [the plaintiff's] disability."[14]

As a result of Lincoln's placing the plaintiff on long-term disability for two years, Document Technologies terminated the plaintiff on November 9, 2020, without engaging in the interactive process.[15] Document Technologies informed Lincoln of the termination, but Lincoln did nothing.[16] Then, in January 2021, Lincoln removed the plaintiff from disability leave (the actual recovery time in her medical records that Lincoln and Document Technologies reviewed before placing her on a two-year disability leave).[17]

Lincoln's contentions about the required length of the plaintiff's leave and her recovery horizon were "gross misrepresentations," Lincoln "knew there was no basis for placing [the

---

[10] *Id.* at 5 (¶ 21).
[11] *Id.* (¶ 23).
[12] *Id.* (¶ 24).
[13] *Id.* at 5 (¶ 25), 6 (¶ 27).
[14] *Id.* at 6 (¶ 29).
[15] *Id.* at 5 (¶ 22), 6 (¶ 30).
[16] *Id.* at 7 (¶ 32).
[17] *Id.* (¶ 33).

plaintiff] on long-term disability" for two years, and Lincoln "intended" the plaintiff and Document Technologies to rely on the alleged misrepresentations.[18]

### 2. Lincoln's Relationship with Document Technologies

Lincoln contracts with Document Technologies to handle short- and long-term disability leave for Document Technologies employees under a group disability plan. In that role, Lincoln determines whether (and for how long) the employees are disabled and therefore eligible for plan benefits, and Lincoln's employees "communicate frequently with [the] . . . employees seeking leave." Lincoln and Document Technologies "also develop action plans and make decisions [about employee leave] together."[19]

### 3. Relevant Procedural History

The plaintiff initiated arbitration (as required by her employment agreement) with Document Technologies.[20] She sued Lincoln in state court, and Lincoln removed the case to federal court.[21] The plaintiff previously filed a conditional non-opposition to Lincoln's motion for judgment on the initial complaint (in which Lincoln asserted ERISA preemption), and then she filed the FAC.[22]

The court has diversity jurisdiction under 28 U.S.C. § 1332.[23] All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636.[24] The court held a hearing on August 4, 2022.

---

[18] *Id.* at 5–6 (¶¶ 26–28).

[19] *Id.* at 1–2 (¶ 3); Group Disability Income Policy, Ex. 1 to Heins Decl. in Supp. of Mot. for Judgment on the Pleadings – ECF No. 17-1 at 30, 39, 59. The court can consider the plan instrument under the incorporation-by-reference doctrine. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

[20] Astanehe Decl. in Supp. of Mot. to Remand – ECF No. 9-2 at 2 (¶ 2).

[21] Compl., Ex. A to Notice of Removal – ECF No. 1 at 15–32; Notice of Removal – ECF No. 1 at 1–10.

[22] Mot. for Judgment on the Pleadings – ECF No. 17; Statement of Non-Opposition – ECF No. 21.

[23] Order – ECF No. 20.

[24] Consents – ECF Nos. 8, 12.

ORDER – No. 22-cv-00292-LB          4

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations, which when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the *claim* needs to be plausible, and not the facts themselves." *NorthBay*, 838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up). Still, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (cleaned up).

## ANALYSIS

The main issue is whether the plaintiff's claims are preempted by ERISA. Lincoln argues that

the claims are preempted because they are challenges to "Lincoln's conduct during the course of handling" the plaintiff's long-term disability claim under an ERISA plan.[25] The plaintiff responds that there is no preemption here because (1) the FAC "seeks redress for [Lincoln]'s misinformation, and not any determination, analysis, or action relating to" the group disability plan, (2) her claims "do not bear on an ERISA regulated relationship," and (3) "no law in [her] complaint acts immediately and exclusively upon ERISA plans."[26] The claims are preempted.

1. **Legal Standard — ERISA Preemption**

A state law claim may be subject to "complete preemption" or "conflict preemption" under ERISA. Complete preemption is governed by ERISA § 502(a), 29 U.S.C. § 1132(a), and conflict preemption is governed by ERISA § 514(a), 29 U.S.C. § 1144(a). *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944–46 (9th Cir. 2009). Complete preemption deals with suits seeking the provision of benefits due under an ERISA plan. *Id.* at 946 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)). Conflict preemption occurs where a state law "relate[s] to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a).

Here, because the plaintiff does not seek benefits due, Lincoln argues only conflict preemption.[27]

There are two categories of state laws where conflict preemption applies: those that have a "reference to" ERISA plans and those that have a "connection with" ERISA plans. *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319–20 (2016). A state law has a "reference to" ERISA plans where it "acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation." *Id.* A state law has a "connection with" ERISA plans where it "governs . . . a central matter of plan administration," "interferes with nationally uniform plan administration," or "force[s] an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict[s] [the plan's] choice of insurers." *Id.* at 320.

Here, the plaintiff invokes generally applicable tort law, so only the "connection with" inquiry

---

[25] Mot. – ECF No. 26 at 15–17; Reply – ECF No. 31 at 2–6.
[26] Opp'n – ECF No. 30 at 5–8.
[27] Mot. – ECF No. 26 at 11.

is implicated. *District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 130 n.1 (1992) (ERISA preemption "does not occur . . . with many laws of general applicability"); *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1082 (9th Cir. 2009) ("[C]ommon law negligence principles . . . do not act 'immediately and exclusively' on ERISA plans, and the existence of an ERISA plan is not essential to these [principles'] operation.").

The Ninth Circuit "employ[s] a 'relationship test' to analyze 'connection with' preemption, under which a state law claim is preempted when the claim bears on an ERISA-regulated relationship, *e.g.*, the relationship between plan and plan member, between plan and employer, [or] between employer and employee." *Id.* at 1082–83. Where "[t]he duty giving rise to the [plaintiff's] claim runs from a third-party actuary, *i.e.*, a non-fiduciary service provider, to the plan participants as intended third party beneficiaries of the actuary's service contract," the claim "do[es] not encroach on ERISA-regulated relationships." *Id.* at 1083.

Where, as here, the defendant is a third party as opposed to the plaintiff's employer, the issue is whether the defendant is a fiduciary under ERISA. *Id.* ("[A] state law negligence claim . . . does not encroach on any actuary-participant relationship governed by ERISA when asserted against a non-fiduciary actuary."); *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1031 (9th Cir. 2021).

"An entity is a fiduciary under ERISA to the extent it has or exercises any discretionary authority, control, or responsibility in the management or administration of an ERISA plan." *Bafford*, 994 F.3d at 1025 (citing 29 U.S.C. § 1002(21)(A)). "There are two types of fiduciaries under ERISA. First, a party that is designated in the plan instrument as a fiduciary is a 'named fiduciary.' Second, a person who exercises discretionary control over management or administration of a plan is a 'functional fiduciary.'" *Id.* at 1026 (cleaned up) (first citing 29 U.S.C. § 1102(a)(2); then citing 29 U.S.C. § 1002(21)(A)).

For the relationship between a third-party fiduciary and a plan member to be implicated, the fiduciary also must have been "performing a fiduciary function during the purported violation." *Id.*; *Hawkes v. Wells Fargo & Co.*, No. 17-cv-00632-JSW, 2018 WL 11182068, at *3 (N.D. Cal. Jan. 30, 2018) ("[A]n individual can perform both fiduciary and non-fiduciary functions."). To be performing a fiduciary function, the defendant must have been exercising discretion with respect

to plan management or administration. *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996). Thus, for example, calculating the amount of pension benefits based on a formula is not a fiduciary function because it is ministerial rather than discretionary. *Bafford*, 994 F.3d at 1028.

## 2. Application

A threshold issue is whether the group disability plan at issue here is an "employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). "An 'employee benefit plan' means either an 'employee welfare benefit plan' or an 'employee pension benefit plan.'" *Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav. Program*, 997 F.3d 848, 859 (9th Cir. 2021) (quoting 29 U.S.C. § 1002(3)). Lincoln argues persuasively that Document Technologies' group disability plan is an "employee welfare benefit plan" under ERISA.[28] The plaintiff does not meaningfully dispute that argument and instead contends that the FAC "pertain[s] to [Lincoln]'s misinformation and not the [p]lan."[29] But Lincoln administered the plan, and when Lincoln placed the plaintiff on two years of disability leave, it was making a decision under the plan.[30] And the plan qualifies as an ERISA plan.

The dispositive issue, therefore, is whether the plaintiff's claims are preempted because they "relate to" the plan under 29 U.S.C. § 1144(a). The claims relate to the plan because under the "connection with" prong of the conflict-preemption analysis, they bear on an ERISA-regulated relationship. *See Paulsen*, 559 F.3d at 1082–83. Specifically, they bear on the relationship between plan fiduciary and plan member because they challenge the decision of a fiduciary made while performing a fiduciary function.

First, the relationship between plan fiduciary and plan member is ERISA-regulated. *Id.* at 1082 (a claim "does not encroach on any actuary-participant relationship governed by ERISA when asserted against a non-fiduciary actuary"). ERISA sets forth the duties of a plan fiduciary and provides that those duties must be discharged "solely in the interest of the participants and

---

[28] *Id.* at 11–14; Group Disability Income Policy, Ex. 1 to Heins Decl. in Supp. of Mot. for Judgment on the Pleadings – ECF No. 17-1 at 5–65.

[29] Opp'n – ECF No. 30 at 5.

[30] FAC – ECF No. 23 at 1–2 (¶ 3), 5 (¶ 23).

beneficiaries." 29 U.S.C. § 1104. ERISA also authorizes causes of action by participants against fiduciaries for breach of fiduciary duties (although liability in such a case is only to the plan, not the plan member). *Id.* §§ 1132(a)(2), 1109(a).

Second, Lincoln is a functional fiduciary under the plan because Lincoln has "discretionary control over . . . [plan] administration." *Bafford*, 994 F.3d at 1026. Lincoln has control over plan administration because the plan instrument gives Lincoln "sole" authority to make "conclusive and binding" decisions about Document Technologies employees' "benefit eligibility."[31] And those benefit-eligibility decisions are discretionary because they require Lincoln to analyze various defined terms and determine whether (and for how long) "the [employee], as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation."[32]

Third, Lincoln was performing a fiduciary function at the time of its alleged torts because its alleged misrepresentations consisted of its decision on the plaintiff's benefit eligibility.[33] *Davila*, 542 U.S. at 218 (under ERISA, "[a] benefit determination . . . is generally a fiduciary act").

Because the plaintiff's claims challenge the decision of an ERISA fiduciary made while performing a fiduciary function, they are preempted and therefore dismissed. *See, e.g.*, *Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1007 (9th Cir. 1998) ("The Supreme Court has held that ERISA preempts state common law tort . . . causes of action asserting improper processing of a claim for benefits under an insured employee benefit plan.") (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 57 (1987)).

The court also considers the "reference to" prong of the conflict-preemption analysis, even though generally applicable tort law has no obvious reference to ERISA plans, because the distinction between the two prongs has not been "applied uniformly." *Dutra v. Recology, Inc.*, No. 20-cv-08716-JST, 2021 WL 4722959, at *13 & n.11 (N.D. Cal. Apr. 26, 2021) (collecting cases); *see Bafford*, 994 F.3d at 1031 (clarifying the proper application and holding that it is well-settled

---

[31] Group Disability Income Policy, Ex. 1 to Heins Decl. in Supp. of Mot. for Judgment on the Pleadings – ECF No. 17-1 at 59.

[32] *Id.* at 14, 30, 39.

[33] FAC – ECF No. 23 at 5 (¶¶ 25–26) (all claims), 9 (¶ 47) (professional negligence), 11–12 (¶ 59) (intentional infliction of emotional distress), 14 (¶ 71) (negligent infliction of emotional distress).

law that common-law negligence principles do not implicate the "reference to" prong). Under the "reference to" prong, the plaintiff's claims are preempted because they "all depend on the existence of an ERISA-covered plan." *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1191 (9th Cir. 2010). That is, resolving the claims would require reference to the plan's terms. *Hawkes*, 2018 WL 11182068, at *7 (for negligence claims, "[q]uestions regarding the contours of [the third-party administrator]'s duty to [the plaintiff] and whether [the third-party administrator] breached that duty would require analysis . . . [of] the terms of the [plan] itself"); *Prince v. Sears Holdings Corp.*, 848 F.3d 173, 179 (4th Cir. 2017) (for an intentional-infliction-of-emotional-distress claim, "[d]etermining whether [the defendant] acted in an 'outrageous' way would require examining and interpreting [the defendant]'s duties and responsibilities under the ERISA plan"). "Put another way, but for the dispute over benefits under the [p]lan, [the plaintiff] would have no state-law claims to bring." *Wilson v. Bank of Am. Pension Plan for Legacy Cos.*, No. 18-cv-07755-TSH, 2019 WL 4479677, at *4 (N.D. Cal. Sept. 18, 2019).

The plaintiff's arguments do not change the result. She first argues that her relationship with a third-party administrator such as Lincoln is not an ERISA-regulated relationship. In support, she relies on cases like *Bafford*, in which the Ninth Circuit held that a third-party administrator was not part of an ERISA-regulated relationship.[34] 994 F.3d at 1031–32. But that holding depended on the court's holding that the administrator was not a plan fiduciary (because it performed only a "ministerial function:" calculation of pension benefits based on a formula). *Id.* at 1028. Here, Lincoln is a plan fiduciary, meaning that *Bafford* and similar cases are distinguishable.

It is true that the Ninth Circuit has sometimes listed only four relationships that are "ERISA-regulated," and none is the relationship between plan fiduciary and plan member.[35] *See, e.g.*, *Paulsen*, 559 F.3d at 1082–83. But the list is non-exhaustive because it is introduced by the abbreviation "*e.g.*" and *Paulsen* contains language necessarily implying that the relationship between plan fiduciary and plan member is ERISA-regulated. *Id.* at 1082 (a claim "does not encroach on any actuary-participant relationship governed by ERISA when asserted against a non-

---

[34] Opp'n – ECF No. 30 at 6–9.

[35] *Id.* at 6.

ORDER – No. 22-cv-00292-LB          10

fiduciary actuary"). And as explained above, ERISA makes clear that the relationship is ERISA-regulated. (Alternatively, the relationship might be described as between plan and plan member — a relationship included in the Ninth Circuit's list. *Id.* at 1082–83.)

The plaintiff also distinguishes her case from those where the claims were preempted by arguing that her claims "do not relate to the plan or plan benefits themselves, but rather [to] the third-party administrator's misstatements that cost [the plaintiff] her job."[36] But those misstatements consisted of Lincoln's discretionary determination of the plaintiff's eligibility for leave under the group disability plan.[37] That the FAC is an attack on Lincoln's fiduciary act under the plan cannot be avoided by describing the act as a misrepresentation. *Varity Corp.*, 516 U.S. at 498–503 (misrepresentations about plan benefits can be a fiduciary act); *Olson v. Gen. Dynamics Corp.*, 960 F.2d 1418, 1421–22 (9th Cir. 1991) (where the plaintiff alleges misrepresentation rather than improper plan administration, the claims can still be preempted). Therefore, the plaintiff's claims relate to the plan.

In sum, the plaintiff's claims are dismissed without prejudice because they are preempted by ERISA.

## CONCLUSION

The motion to dismiss is granted without prejudice. Any amended complaint must be filed within four weeks and must include as an attachment a blackline of the amended complaint against the operative complaint. If no amended complaint is filed, the court will enter judgment in favor of Lincoln.

This resolves ECF No. 26.

**IT IS SO ORDERED.**

Dated: August 4, 2022

LAUREL BEELER
United States Magistrate Judge

---

[36] *Id.*

[37] FAC – ECF No. 23 at 5 (¶¶ 25–26).